UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

---------------------------------------------------------- X

IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION

----------------------------------------------------------

**This Document Relates to:**

*Sherry Pablo, et al., v. Bayer Corp., et al.* Case No. 3:10-cv-20418

*AshtenLuayne Wolfe, et al., v. Bayer Corp., et al.* Case No. 3:10-cv-20403

: 3:09-md-02100-DRH-PMF

: MDL No. 2100

:

: Judge David R. Herndon

:

**ORDER DENYING REMAND**

## ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Both of the above captioned cases are multi-plaintiff actions[1] originally brought in California State Court against various Bayer entities (collectively, "Bayer") (all non-California citizens), and McKesson Corporation ("McKesson") (a citizen of California and Delaware). Bayer removed both actions to federal district court in California alleging that McKesson, the sole non-diverse defendant, was fraudulently joined and that several of the plaintiffs are

---

[1] *Pablo, et al., v. Bayer Corp., et al.,* No. 3:10-cv-20418-DRH-PMF "Pablo" names seven plaintiffs; *Wolfe, et al., v. Bayer Corp., et al.,* No. 3:10-cv-20403 "*Wolfe*" names nineteen plaintiffs.

1

improperly joined. Thereafter, the actions were transferred to this Multidistrict Litigation ("MDL") by the United States Judicial Panel on Multidistrict Litigation.

## II. BACKGROUND

The gravamen of plaintiffs' claims is that the Bayer Defendants made false representations and concealed material facts concerning the safety and efficacy of Yaz, Yasmin, and/or Ocella. The virtually identical complaints assert product liability claims sounding in negligence, strict liability, breach of express and implied warranties, and fraud/misrepresentation as well claims alleging violations of California's consumer protection laws (*Pablo* Doc. 1 pp. 48-59 ¶¶ 90-153; *Wolfe* Doc. 1 pp. 42-54 ¶¶ 90-153). In both actions, all of the claims are directed generically against all of the Defendants.

McKesson is a wholesale distributor of prescription medications that purchases pharmaceuticals for sale to retail pharmacies. Plaintiffs allege that McKesson is *a* distributor of Yaz, Yasmin, and Ocella. Plaintiffs, however, do not allege that McKesson distributed or supplied the pills that caused their alleged injuries. In addition, neither complaint identifies any particular act of fraud or negligence by McKesson, any particular representation by McKesson, or any other actionable conduct on the part of McKesson that could be the basis for a claim of negligence, fraud, or breach of express warranty.

The Plaintiffs have no connection with one another — each received medication prescribed by different doctors, dispensed by different pharmacies, at

different times, and in different locations.The complaints do not identify the plaintiffs' states of citizenship Instead, the complaints merely state that the plaintiffs are "residents of the United States" (*Pablo* Doc. 1 p. 32 ¶ 1; *Wolfe* Doc. 1 p. 27 ¶ 1). In their motions to remand, the plaintiffs assert that five of the seven plaintiffs in *Pablo*[2] and eight of the nineteen plaintiffs in *Wolfe*[3] are "residents" of California (hereinafter "California plaintiffs") and that this Court lacks diversity jurisdiction because McKesson is a citizen of California.

Residency is, of course, different than citizenship. It is evident, however, that plaintiffs intended to state that these plaintiffs are citizens of California. After all, the California citizenship of these plaintiffs is the sole basis for the assertion that diversity of citizenship does not exist. Therefore, the Court will treat the assertion with regard to the "residency" of the California plaintiffs as an assertion of California citizenship.[4]

---

[2] In their motion to remand, the plaintiffs in *Pablo* assert that five of the seven *Pablo* plaintiffs are California citizens (*Pablo* Doc. 22-1 p. 3 n.3; Doc. 22-2 ¶ 2) (stating that plaintiffs Pablo, Garcia, Hall, Valencia, and Cross are California citizens). Plaintiffs make no assertion with regard to the remaining two plaintiffs.

[3] As to the citizenship of the nineteen plaintiffs in *Wolfe*, plaintiffs aver that eight of the plaintiffs are "residents" of California (*Wolfe* Doc. 19-2 ¶ 2) (averring that plaintiffs Wolfe, Russo, Soda-Pond, Williams, Gharebaghi, Bolden, Johnson, and Zucco are residents of California). Plaintiffs make no assertion with regard to the citizenship of the remaining eleven Plaintiffs.

[4] Bayer requested leave to conduct limited jurisdictional discovery to ascertain and/or confirm the citizenship of each plaintiff and to evaluate whether McKesson was fraudulently joined as a defendant as to her claims (*Pablo* Doc. 1 ¶¶ 24-26; *Wolfe* Doc. 1 ¶¶ 27-29).For reasons discussed herein, the Court concludes that additional discovery is unnecessary.

Plaintiffs do not assert that there is a jurisdictional issue with regard to any of the plaintiffs and the Bayer entities. Plaintiffs, however, have not provided any information with regard to the citizenship of the non-California plaintiffs.[5] The failure to address the non-California plaintiffs' citizenship or to assert that there is any jurisdictional issue with regard to the Bayer entities, indicates that none of the plaintiffs is a citizen of the same state as the Bayer entities. In addition, given the severely inadequate jurisdictional allegation in the complaints (averring that plaintiffs are "residents of the United States"), it is evident that plaintiffs have an interest in destroying diversity. Considering the above, the Court presumes that none of the plaintiffs is a citizen of the same state as any of the Bayer defendants.[6]

### III. ANALYSIS

#### A. Necessity of Alleging that McKesson Supplied the Subject Drugs

---

[5] Bayer states that it has been able to ascertain the citizenship of some but not all of the non-California plaintiffs. With regard to the non-California plaintiffs in *Pablo*, Bayer contends (and plaintiffs do not refute) that plaintiff Foret is a citizen of Louisiana (*Pablo* Doc. 1 p. 15 ¶ 2; *Pablo* Doc. 25 p. 3 n.6). Plaintiff Howard's state of citizenship is unknown (*Pablo* Doc. 25 p. 3 n.6). As to the plaintiffs in *Wolfe*, Bayer contends that plaintiff Baumy is a citizen of Louisiana; plaintiff Gronholz is a citizen of Minnesota, plaintiff Mack is a citizen of Texas, and plaintiff Repp is a citizen of Ohio (*Wolfe* Doc. 1 p. 19 ¶ 2; *Wolfe* Doc. 24 p. 3 n.6).

[6] The Court notes that a jurisdictional issue in this respect does not have any bearing on whether McKesson has been fraudulently joined. It may, however, affect the presence of complete diversity. Accordingly, in denying remand, the Court has also instructed the plaintiffs to file a notice with the Court, within seven days of the entry of this order, stating each plaintiff's state of citizenship. If any plaintiff is a citizen of the same state as one of the Bayer defendants, the Court will reconsider the issue of complete diversity at that time.

4

The Court has resolved numerous remand motions in similarly situated member actions in this MDL (i.e. actions involving one or more California citizens and McKesson, as the sole non-diverse defendant, that were originally brought in a California state court, removed to a California district court, and transferred to this Multidistrict Litigation ("MDL"). In twelve of those actions, the Court concluded that McKesson had been fraudulently joined because the plaintiff(s) failed to allege that McKesson supplied the subject drugs. *See In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab.Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) (denying plaintiffs' motions to remand in 11 cases originally filed in California state courts); *Jankins v. Bayer Corp.*, No. 3:10-cv-20095-DRH-PMF, MDL No. 2100, 2010 WL 1963202 (S.D. Ill. May 15, 2010) (denying motion toremand); *Jankins v. Bayer Corp.*, No. 3:10-cv-20095-DRH-PMF, MDL No. 2100, 2010 WL2402926 (S.D. Ill. June 15, 2010) (denying reconsideration of order denying remand).

In *Jankins*,the Court found that although a pharmaceutical distributor may be held liable under California law, the plaintiff's inadequate allegations as to McKesson established that McKesson had been fraudulently joined and denied remand*Jankins*, 2010 WL 1963202, at *3-*4. The Court explained that causation would be a requisite element of any claim directed against McKesson and that, to sufficiently allege causation, the plaintiff must assert McKesson supplied the pills that caused her alleged injuries. *Id.* at

5

*4. Because the plaintiff in *Jankins* failed to plead that McKesson supplied the subject drugs, the Court concluded it had no choice but to find McKesson had been fraudulently joined. *Id.* In June 2010, the Court considered and denied plaintiff's motion to reconsider the order denying remand. As the Court explained in its order denying plaintiff's motion to reconsider:

> [T]o sufficiently allege a claim against McKesson, Plaintiff must allege that McKesson was an entity within the chain of distribution – put another way, Plaintiff must allege that McKesson supplied the subject matter drugs to the Plaintiff…Plaintiff's Complaint fails to do this. The Complaint merely alleges that McKesson was *a* distributor of the subject matter drugs…Alleging that McKesson was *a* distributor of the subject matter drugs is not the equivalent of alleging that McKesson was *the* distributor that supplied the drugs that allegedly caused Plaintiff's injuries. Absent such an allegation, there can be no causal connection between McKesson and Plaintiff's alleged injuries and the Court must conclude that Plaintiff has not sufficiently pled a claim against McKesson.

*Jankins*, *v.* 2010 WL 2402926 at *3.

The Court also concluded that plaintiff's boilerplate allegations as to "Defendants" did not sufficiently plead a claim against McKesson. Throughout the Complaint, the plaintiff made allegations against "Defendants" generally (grouping McKesson with the Bayer entities), rather than directing allegations against McKesson specifically. For example:

> The Defendants were in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing into interstate commerce either directly or indirectly through third parties or related entities, the [subject matter drugs].

6

As the Court explained in its order on plaintiff's motion for reconsideration, "the only part of this generic allegation that could possibly relate to McKesson is the assertion as to the 'distributing, selling, and/or introducing into interstate commerce' of the subject matter drugs."*Id.* at *3-*4.The Court concluded that this type of generic allegation is not sufficient. *Id.*

The Court came to the same conclusion when it considered eleven remand motions in October 2010. *See In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab.Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010). These actions were multi-plaintiff actions which included one or more California plaintiffs and a mixture of plaintiffs from a myriad of states across the country. The complaints in these actions, like the complaint in *Jankins*, did not allege that McKesson supplied the subject drugs. Instead, the complaints merely alleged that McKesson was "a" distributor of the subject drugs.

The Court explained that, regardless of which state's substantive law governed and regardless of the theory of recovery,establishingMcKesson manufactured, supplied, sold, distributed or was in some way responsible for the allegedly injurious product was a threshold requirement for imposing liability (i.e. establishing a causal link). *Id.* at *6-*7.Accordingly, absent an allegation that McKesson was in some way responsible for the pills that caused the plaintiffs' alleged injuries, the Court had no choice but to find (as it did in *Jankins*) that McKesson had been fraudulently joined. *Id.* at *6-*9.

7

**B. Sufficiency of Plaintiffs' Complaints**

In the instant case, plaintiffs merely allege that McKesson is *a* distributor of Yaz, Yasmin, and Ocella in the State of California. (*Pablo* Doc. 1 p. 36 ¶ 22; *Wolfe* Doc. 1 p. 30 ¶ 22) (averring that McKesson "was engaged in the business of distributing, researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or warranting [Yaz, Yasmin, and Ocella] in the State of California"); (*Pablo* Doc. 1 p. 37 ¶ 26; *Wolfe* Doc. 1 p. 31 ¶ 26) (asserting that McKesson "packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted and purported to warn or to inform users regarding the risks pertaining to and assuaged concerns about the pharmaceutical Yasmin and YAZ").

These allegations do not sufficiently allege that McKesson supplied the pills that were ingested by the plaintiffs. For the reasons discussed herein, alleging that McKesson is *a* distributor is not the same as alleging that McKesson is *the* distributor that supplied the pills ingested by the plaintiffs.[7] The remaining allegations in plaintiffs' complaints are directed against "Defendants" generally. As the Court explained above, such general allegations are not sufficient.

---

[7] The Court also notes that the allegation that McKesson distributed Yaz, Yasmin, and Ocella in California is particularly unhelpful with regard to the non-California plaintiffs.

8

Absent an allegation that McKesson supplied the subject drugs, there is no reasonable possibility that a state court would find that the Complaints, in their present condition, state a cause of action against McKesson. Accordingly, the Court finds that McKesson has been fraudulently joined and denies remand.

## IV. CONCLUSION

In a product action, under any substantive law, a plaintiff must establish a causal link between the defendant and the alleged harm. Thus, to plead a sufficient cause of action against McKesson plaintiffs must allege that McKesson distributed, supplied, or was in some way responsible for the drugs the plaintiffs ingested. The plaintiffs in the above captioned actions have completely failed to allege causation as to McKesson.

Accordingly, there is no reasonable possibility that a California state court would find that the complaints in the above captioned actions state a valid claim against McKesson. Absent an allegation that McKesson supplied the subject drugs, the Court has no choice but to find that McKesson has been fraudulently joined. Therefore, the Court **ORDERS** as follows:

The motions to remand in the above captioned cases are **DENIED.**

**FURTHER,** the Court **ORDERS** the plaintiffs to file a notice with this Court within seven days of the entry of this order stating each plaintiff's state of citizenship. If, after reviewing plaintiffs' notice with regard to citizenship, the Court finds that complete diversity is lacking as between the plaintiffs and the

Bayer defendants (the only properly joined defendants), it will reconsider the jurisdictional issue at that time.

**SO ORDERED.**

David R. Herndon
2011.05.17
08:42:35 -05'00'

**Chief Judge**  **Date: May 17, 2011**
**United States District Court**